Opinion by
Henderson, J.,
■The execution of the note in question is not denied, nor is it disputed that Mrs. Walton received the full consideration therefor. The allegation is that payments were made by T. R. Walton, husband of Mrs. Walton, to an amount in excess of the note. The only witness who alleges such payments is T. R. Walton. Mrs. Walton did not take any part in the management of the business, nor in the negotiation which resulted in her purchase of the half interest in the stable from the plaintiff. There is an entire absence of evidence that the plaintiff agreed to apply any of the payments made by T. R. Walton as credits on the note. The nearest the defendants come to such a claim is found in the testimony of T. R. Wal *355 ton, who, in answer to the question, “What did you pay him (the plaintiff) $25.00 per month for?” said, “As I supposed to be credited on the note and on the purchase with interest.” A shadowy claim was set up that the plaintiff had sold to T. R. Walton the other half of the livery, but when directly interrogated as to whether he had made such a purchase he said that he had not, but that the plaintiff had told him that he (the witness) would have the first chance to buy it. T. R. Walton paid money to the plaintiff at the rate of $25.00 a month from June 1, 1903, and, for a short time, $30.00 per month, and it was with reference to these payments that the witness gave the answer above quoted. The plaintiff denied that any payments were made on account of the note and explained that the payments made by T. R. Walton were on account of a lease which the plaintiff had made to him of the half of the livery not sold to Mrs. Walton, the contract being, according to the plaintiff, that T. R. Walton should pay him $25.00 per month for the rent of that half and keep a horse for him in addition thereto. Walton does not expressly assert that he bought a half interest in the livery, but he acted upon .the assumption that he had so done, if we are to give full credit to his testimony. In contradiction of.his position it appears from his own evidence that the payments made by him would overpay the note about $460; that he presented a bill from the stable to the plaintiff a few days before the execution was issued which shows a balance due the plaintiff of $40.00; that he advised the plaintiff to issue an execution on the judgment and that he gave the sheriff a list of the property in the stable to be levied on. So far as payments were made for the half of the stable, which T. R. Walton assumes he was buying, the transaction was entirely independent of the note and, whatever they may have amounted to, such payments could not be used in discharge of the judgment, and in the absence of evidence that payments were made and accepted to apply on the note there is nothing entitling the defendants to relief. There is positive evidence by the plaintiff that he leased the half of the livery to T. R. Walton. It is not shown that Walton held that half by any other arrange *356 ment. Under the most favorable view which could be taken of the case it is one of oath against oath, and that does not warrant the opening of a judgment. We have nothing to do with the subject of the amount of rent alleged by the plaintiff to have been payable to him. Whether it was more than was reasonable, taking the perishable character of the property into consideration, is not shown. The parties were competent to make their own contract and if it was so made it is binding upon them. After a careful examination of the evidence we are of the opinion that the defendants failed to present a case which entitled them to have the judgment opened.
The decree is, therefore, reversed.